Doyle, J.
This proceeding was instituted to compel the municipal authorities of the city of Lorain, Ohio, to publish its ordinances and resolutions in a publication called the Lorain Post, a publication printed in the German language in said municipality.
*637 It is admitted that the relator is a tax-payer of the city of Lorain and was before the commencement of this suit and now is publishing in the city of Lorain a newspaper called the Lorain Post, and that the relator filed with the city clerk of the city of Lorain on the 20th of June, 1910, an affidavit alleging that the said the Lorain Post was a newspaper printed in the German language in the city of Lorain, state of Ohio, and that said newspaper had a bona fide paid circulation within the said municipality of not less 'than one' thousand' copies. The relator claims that all of the ordinances and resolutions of said municipality requiring publication should by virtue of Section 4228, General Code, be published in the Lorain Post. No issue was made on the right of the relator to maintain this proceeding, it being taken for granted that it was beneficially interested and if able to qualify under the statute was entitled to the writ.
It seems that after the filing of the affidavit, which was prima facie proof of the facts which were necessary to make publication of the ordinances and resolutions in a newspaper printed in the German language in such municipality necessary under Section 4228, General Code, the city authorities made some investigation of the circulation of the newspaper in question and stopped the publishing of its ordinances therein.
The evidence in this case shows that 1250 copies of the Lorain Post were at that time and are now printed and circulated within the city of Lorain weekly; that it has a subscription list book which shows two hundred and eighty-two subscribers within the city of Lorain; and also has nine hundred and sixty-eight cards signed by as many subscribers; that the number of persons who have actually paid their subscriptions in advance, as indicated in said subscription book and cards, does not exceed eight hundred; that twenty-five per cent, of these subscribers do not read German; that some of these subscribers who do not read German, have members in their families who do; that a majority of the persons whose names appear on the subscription lists read one or both of the daily newspapers published in the English language in the city of Lorain; that the relator is ready and willing to publish said ordinances and resolutions 'as required by law.
*638 The subscription cards referred to read as follows:
“Lorain, O.,.........., 191..
The Lorain Democrat Co.,
Lorain, Ohio.
Gentlemen: Please send me the Lorain Post at the following address for one year and thereafter, until ordered discontinued by me, for which I agree to pay the sum of twenty-five cents per year.
Name..................................
Address . ............................. St. Lorain, Ohio. 1910, 1911, 1912, 1913, 1914, 1915.”
Such an instrument constitutes an obligation on the part of the person signing the card to pay the sum stated therein each year that the Lorain Post is sent to him until discontinued by him.
The defendant contends that, because all of the 1,000 subscriptions have not been paid in advance, they are not “paid subscriptions”; and that because some of the subscribers do not read the German language and that because a majority read also one or both of the English papers published in Lorain, that the relator is not entitled to have them credited as subscribers to the paper.
As to the first contention, Section 4228 reads as follows:
“Ordinances and resolutions requiring publication shall be published in two newspapers of opposite politics, published and of general circulation in such municipality, if such there be, and shall be published in a newspaper printed in the German language if there is in such municipality such a paper having a bona fide paid circulation within such municipality of not less than one thousand copies. Proof of such circulation shall be made by the affidavit of the proprietor or editor of such paper, and shall be filed with the clerk of the council.”
In its general legal sense the word “paid” signifies satisfaction in money or other thing of value of an obligation due from one to another, but in its employment in contracts and in legislative enactments it may have a wider latitude of meaniug according to the connection in which it is used.
*639 It was so recognized in the dictum in the case of The Milwaukee Mechanics Insurance Company v. Russell, 65 O. S., 230, at page 260.
' The use of words like this in contracts and in legislative enactments must very often be construed in their popular sense. The connection in which they are used will very often determine their meaning far better than their strict legal meaning. Such construction should be made by the court for the reason that it is the intention of the Legislature which is attempted to be sought.
In a stipulation in a charter party by which the owner should receive the highest freight which he could prove to have been paid for ships on the same voyage or passage by water, 'the word “paid” was used in the popular and ordinary sense meaning “contracted for,” and the word would be satisfied by proof of a contract for payment. Gether v. Capper, 15 C. B., 696, 701; 29 Eng. Law and Eq., 242, 245.
It is evident, from the sense in which the words “paid circulation” are used in Section 4228, that they are used in contradistinction from gratuitous circulation. It does not mean that each subscriber has made satisfaction in money of his obligation to pay for the paper but it means that' he is to receive the paper and pay for the same and not receive ’it as a gratuity.
Now as to the other contention, that is, that the subscribers are not all able to read German, I think an examination of all of the cases which attempt to define what a newspaper is will show that the ability of the persons subscribing for the paper to read it does not determine the character of the newspaper. The statute requires that it should be a newspaper printed in the German language. • It is reasonable to suppose that a newspaper in this country printed in any other language than English, would undoubtedly .have some subscribers who are unable to read it.
The purpose of publishing ordinances and resolutions is to give them as much publicity as possible and, anticipating that there probably would be quite a number of persons in a municipality who could not read English but could read German, the *640 Legislature in order to provide the utmost publicity for the ordinances and resolutions, provided that if in any such municipality there was a newspaper printed in the (German language, having a bona fide paid circulation of not less than 1,000 copies, that the ordinances and resolutions should be published in such newspaper. It would be presumed that if there were persons in that municipality who were unable to read English and could read German, that in order to read the news they would undoubtedly subscribe for a German newspaper and read it. With twenty-five per cent, of the subscribers of this paper not reading German, but some of them having members of their families who • do, the supposition is that the remaining subscribers do read the German language and do read the publications of the ordinances and resolutions therein and to that extent the publication of these ordinances and resolutions gives notice to the very persons whom the Legislature intended should have notice of them.
There is nothing in this section in question that requires that the subscribers should be able to read the paper, and without something in the section requiring that the subscribers should be able to read the paper, the court can not hold other than that the newspaper in question, the Lorain Post, has a bona fide paid circulation of not less than 1,000 copies. The other part of this contention needs no comment because the fact that a subscriber to a paper may read many others does not make him any less a bona fide subscriber. In fact it is not uncommon for persons to be subscribers and readers of a number of newspapers.
A writ of mandamus will therefore issue .ordering the defendants to publish, the ordinances and resolutions of the city of Lorain requiring publication, in the Lorain Post, as prayed for in. the relator’s petition.